UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CHRISTOPHER LEESON,

        Plaintiff,

  v.

MERCK & COMPANY, INC., PFIZER, INC., MCKESSON CORPORATION, and DOES 1 through 100, inclusive,

        Defendants.

CASE NO. CIV. S-05-2240 WBS PAN

MEMORANDUM AND ORDER RE: MOTION TO REMAND AND MOTION TO STAY

----oo0oo----

        Plaintiff Christopher Leeson brought this action in the Superior Court in and for the County of Los Angeles for damages related to a myocardial infarction allegedly caused by the drugs Vioxx and Celebrex. The action was removed to this court on November 4, 2005.[1] Plaintiff now seeks a remand to state court

---

[1] Pursuant to the instructions of the state court, plaintiff filed his case in the Superior Court in and for the County of Los Angeles and designated Placer County as the "county of origin", which is controlling for removal purposes in the

1

and attorneys' fees incurred in connection with that motion. Defendants Merck and Pfizer oppose plaintiff's motion to remand and Merck moves the court to stay this case pending transfer to the Eastern District of Louisiana pursuant to 28 U.S.C. § 1407.

I.   Factual and Procedural Background

Defendant Merck is a pharmaceutical company incorporated and having its principal place of business in New Jersey. Prior to September, 2004, Merck manufactured and marketed Vioxx, a nonsteroidal anti-inflammatory drug ("NSAID") used to treat arthritis and acute pain. However, on September 30, 2004, Merck voluntarily withdrew Vioxx from the market in light of evidence that patients taking the drug experienced cardiovascular complications.

Defendant Pfizer is also a pharmaceutical company, incorporated in Delaware and having its principal place of business in New York. Pfizer manufactures Celebrex, another NSAID that competes with Vioxx and allegedly presents similar risks to cardiovascular health. Celebrex, however, is still commercially available.

Multidistrict litigation ("MDL") against both companies, arising from consumption of these drugs, is currently pending in the federal courts. On February 16, 2005, the Judicial Panel on Multidistrict Litigation ("JPML") consolidated 138 federal cases involving Vioxx and transferred them to the Eastern District of Louisiana. See MDL Panel Docket Nos. 1657 and 1699, CTO-35 and CTO-11 (Dec. 21, 2005). At last count,

---

state Coordination Proceeding involving Vioxx products liability claims.

2

2,680 additional Vioxx cases had been transferred there. Id. On September 6, 2005, the JPML similarly consolidated cases against Pfizer involving Celebrex and Bextra and transferred them to the Northern District of California. Id. Three hundred and forty-nine additional Celebrex/Bextra cases have since been added to that proceeding. Id. In cases such as the instant action, where the plaintiff brings claims against both companies, the JMPL has elected to sever the claims and, with the permission of the particular district court, assign them to their respective MDL proceeding. Id.

Plaintiff's suit is, however, further complicated by plaintiff's inclusion of a third defendant. In addition to Merck and Pfizer, the manufacturer defendants, plaintiff is suing the McKesson Corporation, a California corporation allegedly serving as the state's primary distributor of pharmaceuticals. (Pl.'s Opp'n to Def.s' Mot. to Stay Ex. 1 (Wolden Decl. at 7).) Plaintiff, also a citizen of California, contends that McKesson's involvement in this suit rendered Merck's removal of this action improper. Accordingly, he moves to remand the case to Los Angeles Superior Court where Judge Chaney is presiding over a Coordination Proceeding (JCCP No. 4247) for Vioxx lawsuits in California. In response, defendant Merck moves to stay this action[2] in light of Conditional Transfer Order 35, which marked

---

[2] Defendant Pfzier only filed an opposition to plaintiff's motion to remand and touched on the stay issue in that brief. Defendant McKesson has not filed papers since the case was removed.

3

this case as potentially transferrable to the MDL proceedings.[3] Merck argues that after the transfer is complete, the MDL courts will be in the best position to provide a uniform answer to the question presented here: whether McKesson was fraudulently joined for the purpose of defeating diversity jurisdiction.

II. Discussion

For a federal court to have jurisdiction based on diversity, there must be complete diversity between the parties. Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). Complete diversity only exists when no defendant is a citizen of the same state as any plaintiff. Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996). Therefore, because McKesson is, like plaintiff, a citizen of California, complete diversity does not exist on the face of the complaint.

However, an exception to the requirement of complete diversity exists where a non-diverse defendant has been fraudulently joined. Morris, 236 F.3d at 1067. "'Fraudulent joinder' is a term of art [and] it does not reflect on the integrity of plaintiff or counsel but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or in fact no cause of action exists." Lewis v. Time Inc., 83 F.R.D. 455, 460 (E.D. Cal. 1979) (citation omitted). "[I]f the plaintiff fails to

---

[3] Plaintiff opposed transfer of this matter, as conditionally ordered in MDL-1657 CTO-35 and MDL-1699 CTO-11, on January 3, 2006. Consequently, actual transfer of this action has been delayed and may yet be defeated. However, according to Merck, "to date, the Panel has rejected each and every motion to vacate a conditional transfer order that it has taken under consideration." (Def.'s Mot. to Stay 5 n.1.)

4

state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state," then the defendant's joinder is deemed fraudulent and is ignored for purposes of diversity. Morris, 236 F.3d at 1067 (quoting McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)).

### A. Order of Pending Motions

As an initial matter, though, the court must determine which motion--plaintiff's motion to remand or Merck's motion to stay--to entertain first. Generally, jurisdiction is a preliminary matter that should be resolved before all others. Smith v. Mail Boxes, Etc., 191 F. Supp. 2d 1155, 1157 (E.D. Cal. 2002) ("[J]urisdictional issues should be resolved before the court determines if a stay is appropriate."); see also Villarreal v. Chrysler Corp., No. C-95-4414, 1996 WL 116832, at *1 (N.D. Cal. Mar. 12, 1996) ("Judicial economy will best be served by addressing the remand issue [before a party's motion to stay] because a determination on this issue will facilitate litigation in the appropriate forum."). However, the calculus changes somewhat when deference to a MDL court will further "the uniformity, consistency, and predictability in litigation that underlies the MDL system." Conroy v. Fresh Del Monte Produce Inc., 325 F. Supp. 2d 1049, 1053 (N.D. Cal. 2004). Resolution of a motion to remand can be left to the transferee court when "the motion raises issues likely to arise in other actions pending in [the consolidated action]." Id.; see also In re Vioxx Prods. Liability Litigation, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005) ("[M]otions to remand . . . can be presented to and decided by the transferee judge.").

5

More specifically, several courts have applied the following methodology when considering simultaneous motions to remand and stay in the MDL context.  "First, the court should [scrutinize] the merits of the motion to remand" and consider it in full if "this preliminary assessment suggests that removal was improper."  Conroy, 325 F. Supp. 2d at 1053.  "Second, if the jurisdictional issue appears factually or legally difficult, the court should determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding."  Id.  If the second inquiry is answered affirmatively, the court should consider staying the action.  Id.; see also Meyers v. Bayer AG, 143 F. Supp. 2d 1044, 1048-49 (E.D. Wis. 2001); Quincy Cmty. Servs. Dist. v. Atl. Richfield Co., No. S-03-2582, slip op. (E.D. Cal. Mar. 24, 2004) (quoting Meyers).

Applying this methodology here, the court finds that a stay is in order.  First, in light of Merck's fraudulent joinder arguments, removal was not plainly improper.  In numerous cases, Merck has challenged plaintiff's inclusion of McKesson, arguing that (1) California law does not charge distributors with a duty to warn consumers of the hazards associated with prescription drugs[4] and (2) plaintiff has failed to sufficiently allege a connection between the drugs distributed by McKesson and those consumed by the plaintiff.  See, e.g., Martin v. Merck & Co., No.

---

[4] As part of its attack on distributor liability under California law, defendants argue that state law does not recognize such a claim, and that, even if it does, federal requirements that govern the content of warning labels preempt state laws that might hold distributors liable for failure to warn.  (Def. Merck's Opp'n to Pl.'s Mot. to Remand 14-15.)

6

S-05-750, slip op. (E.D. Cal. Aug. 15, 2005). Yet only a handful of judges have found that California law does not clearly exempt distributors from strict liability for failure to warn. See, e.g., Black v. Merck & Co., No. 03-8730, slip op. (C.D. Cal. Mar. 3, 2004) (holding that Merck failed "to show 'absolutely no possibility' that Plaintiffs could prevail on their strict liability claim against McKesson"); Martin, No. S-05-750.

Additionally, only Judge Karlton has held that evidence that a plaintiff purchased his drugs from an outlet (e.g., Safeway) whose primary supplier was McKesson demonstrates a sufficient connection between the plaintiff and the distributor.[5] Martin, No. S-05-750. In contrast, the undersigned has denied a similar motion to remand when the plaintiff failed to allege "that McKesson . . . handled the specific pills that were allegedly the cause of her injuries." Aronis v. Merck & Co., No. S-05-0486, slip op. (E.D. Cal. May 3, 2005).[6] The preliminary assessment is supposed to be a limited inquiry, undertaken only if removal was clearly improper. With just a few examples of how to handle this issue and outcomes on both sides, Merck's

---

[5] Significantly though, in the Central District, Judge Walter, who has related the cases involving Merck for that region, has held that alleging that McKesson "distributed and sold Vioxx in and throughout California . . . which was ingested by plaintiffs," is sufficient. See, e.g., Aaroe v. Merck & Co., No. 05-5559, slip op. at 2 (C.D. Cal. Sept. 1, 2005); Aaron v. Merck & Co., No. 05-4073, slip op. at 2 (C.D. Cal. July 26, 2005). (Cf. Compl. ¶¶ 1, 13, 15 ("Plaintiff ingested and consumed the prescription drugs Vioxx® and Celebrex®, as . . . distributed, marketed, . . . [or] sold ['in California'] or otherwise placed in the stream of interstate commerce by . . . Defendant McKesson Corporation . . . .").)

[6] Admittedly though, Aronis was based on a skimpy form complaint that differed significantly from the Master Complaint used by plaintiff's counsel in more recent cases like this one.

7

fraudulent joinder arguments are not clearly baseless.

Second and perhaps more importantly, in the majority of cases submitted for this court's consideration, cases that have already been transferred to the MDL court or are awaiting transfer, courts have either (1) issued a stay and left the motion to remand for the MDL court to decide or (2) avoided the issue all together because the case was transferred before such motions were heard or even filed.[7] In October, 2005, Judge Patel of the Northern District of California noted that "there are presently more than 25 California cases that involve precisely the same fraudulent joinder of the McKesson defendants already pending before the MDL judge." Johnson v. Merck & Co., No. 05-02881, slip op. at 2 (N.D. Cal. Oct. 3, 2005) (granting defendant's motion to stay); see also In re Vioxx Prod. Liability Cases, No. 05-0943, slip op. at 5 (S.D. Cal. July 11, 2005) (staying 18 consolidated cases and denying without prejudice plaintiff's motion to remand; these cases were transferred to the MDL court in late 2005); Love v. Merck & Co., No. 05-2140 (E.D. Cal. filed Oct. 24, 2005) (naming McKesson as a defendant; case transferred before a motion to remand was filed); Lagden v. Merck & Co., No. 05-0656 (E.D. Cal. filed Apr. 4, 2005) (same). Consequently, "identical or similar jurisdictional issues have

---

[7] The glaring exception to this practice has been the Central District of California, where the court has routinely remanded cases involving Vioxx and McKesson. Defendants explained at oral argument that the Central District, following an approach adopted in cases before the MDL panels were created, has remanded approximately 12 cases involving McKesson. See, e.g., Black, No. 03-8730, slip op. As discussed in more detail above, this approach differs from that in the Northern and Southern Districts, where at least twice as many cases have been stayed.

8

been raised in other cases that have been or may be transferred to the MDL proceeding."[8]  Conroy, 325 F. Supp. 2d at 1053.

The MDL court will therefore necessarily need to rule on the alleged fraudulent joinder of McKesson.  The Conroy methodology suggests, then, that the court should first consider Merck's motion to stay.

### B.  Merck's Motion to Stay

The power to issue a stay, as the Supreme Court has noted, "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).  Primarily, the court is concerned with balancing competing interests and thus should consider: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated."  Rivers v. Walt Disney Co., 980 F. Supp. 1358, 1360 (C.D. Cal. 1997); see also Landis, 299 U.S. at 254-55; CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962).

Here, plaintiff argues that it will suffer prejudice as a result of a stay because (1) it will be forced to litigate the remand motion in a "foreign forum . . . before a judge who might

---

[8] Although the various outstanding motions to remand in cases transferred to the MDL court all rest on the particular law of the state and circuit where the case originated, Judge Fallon, who is presiding over the Vioxx MDL, has already taken steps to group like cases.  (Def.'s Reply to Mot. to Stay (Kim Decl. Ex. I (Hr'g Tr. 21, June 23, 2005)).)  It is therefore safe to assume that the McKesson cases will all be considered at once and under applicable California and Ninth Circuit law.

9

be less sympathetic to the plaintiff's cause" and (2) its case may be needlessly "carved . . . in half" and shipped off to separate MDL proceedings for the purpose of determining that federal courts never had jurisdiction in the first place. (Pl.'s Opp'n to Def.'s Mot. to Stay 3, 13.)  Plaintiff's first argument is without merit, as plaintiffs from up to 49 states in every MDL case are routinely forced to litigate pretrial motions in a foreign forum.  His second argument is likewise flawed because it is based on his erroneous assumption that the Los Angeles Coordination Proceeding for Vioxx will allow him to pursue his claims against all defendants in a single litigation, at least until separate trials for the Vioxx and Celebrex/Bextra claims begin.  Judge Chaney, who is presiding over JCCP 4247, determined at a status conference on October 14, 2005 that the claims against Merck and Pfizer will, as in the federal litigation, be severed in the state litigation.  (Def. Pfizer's Opp'n to Pl.'s Mot. to Remand Exs. G-H (Notice of Ruling Re: Oct. 14, 2005 Status Conference).)  Therefore, plaintiff's ability to pursue his claims against all defendants in a single proceeding exists, at best, only temporarily.[9]

On the other hand, Merck stands to suffer some hardship and inequity if the court instead addresses plaintiff's motion to

---

[9] Judge Chaney intended to make a more definite ruling regarding the relationship between claims against Merck and Pfizer on November 19, 2005.  This proceeding was, however, continued by the court.  See http://www.lasuperiorcourt.org/civilCaseSummary/index.asp?CaseType=Civil (search term: "JCCP 4247").

1  remand.[10]  If this court considers and denies plaintiff's motion
2  to remand, plaintiff will have a second bite at the apple before
3  the MDL court, which, as explained, will necessarily address the
4  fraudulent joinder of McKesson in the several cases already
5  transferred from California district courts.  "Although
6  transferee judges should generally respect any orders of a
7  transferor judge," experience teaches that this is not always the
8  case.  Rivers, 980 F. Supp. at 1361 (citing examples where MDL
9  courts have vacated or modified previous rulings).  Merck should
10 not have to defend against the same motion repeatedly brought by
11 the same plaintiff.  Alternatively, if this court determines that
12 McKesson was not fraudulently joined and the MDL court holds
13 otherwise, Merck will be stuck with a decision that is contrary
14 to the decision applicable in a majority of the other similar
15 cases against it because an order to remand is not appealable.
16 Kunzi v. Pan Am. World Airways, Inc., 833 F.2d 1291, 1293 (9th
17 Cir. 1987) ("Remand orders . . . are immune from appellate review
18 . . . even if the district court's jurisdictional decision was
19 erroneous.").  Therefore the legitimate prejudice considerations
20 here seem to favor staying this action.

---

[10] The court's analysis of the motion to stay, like the parties' briefs, largely focuses on Merck's arguments.  Perhaps because the Pfizer MDL is located in plaintiff's home state of California, plaintiff has not contested, and does not plan to challenge, Pfizer's removal of cases that do not involve Merck. (Def. Pfizer's Opp'n to Pl.'s Mot. to Remand Ex. D. (Letter from Clifford Carter to Peter Schnaitman).)  Consequently, although five to six cases involving McKesson are part of MDL-1699 (according to Pfizer), it is unlikely that Judge Breyer (who is presiding over the Celebrex/Bextra MDL) will have to consider the fraudulent joinder issue since the plaintiffs do not plan to move to remand those cases.  Nevertheless, should plaintiffs change their approach or tactics, Pfizer would face the same hardships that Merck will inevitably face.

11

1         Moreover, the third factor, which discourages
2 duplicative litigation, obviously favors a stay in this instance.
3 Dozens of cases with outstanding motions to remand, which
4 specifically contend that McKesson has not been fraudulently
5 joined, are before the Vioxx MDL judge and thus will be disposed
6 of uniformly.  It follows then that, in the interest of judicial
7 economy and to further the consistency that MDL proceedings aim
8 to provide, this court should stay proceedings in this matter
9 until a definitive transfer order issues.[11]
10         IT IS THEREFORE ORDERED that:
11         (1) defendant Merck's motion to stay be, and the same
12 hereby is, GRANTED;
13         (2) plaintiff's motion to remand be, and the same
14 ///
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///

---

[11]  Although Judge Breyer does not face the same volume of cases presenting a fraudulent joinder question as Judge Fallon, a stay of plaintiff's claims against Pfizer, as well as his claims against Merck, is still likewise in the interests of judicial economy.  As observed in note 10, in a handful of the Pfizer cases before Judge Breyer, the plaintiffs could challenge federal jurisdiction, but have declined to do so. In the event that plaintiffs change their approach to the Celebrex litigation, another California district court would be just as well equipped as this court to address the fraudulent joinder question. Moreover, Judge Breyer, unlike the undersigned, could resolve this issue in several cases at once.

hereby is, DENIED WITHOUT PREJUDICE; and

        (3) plaintiff's motion for attorneys' fees and costs be, and the same hereby is, DENIED.[12]

DATED: January 25, 2006

*William B. Shubb*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[12] An order directing "payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal" is only warranted when the motion to remand is granted. See 28 U.S.C. § 1447(c).

13